**BUSINESSES AND PROFESSIONS**

COUNTIES − CHARTER HOME RULE COUNTIES − CHARTER
COUNTY RESTRICTIONS ON THE PRACTICE OF LAND
SURVEYING ARE INVALID

November 30, 1995

*Dr. Charles E. Maloy*
*Chairman*
*State Board for Professional Land Surveyors*

You have requested our opinion whether charter home rule counties may refuse to accept for filing certain plans that were prepared by a professional land surveyor, instead of a professional engineer. The plans in question are for storm drainage systems, drainage for a street or road, and grade design for a street or road. Such refusals are sometimes based on an express county statutory requirement that these plans are to be certified by a professional engineer; the refusals are at other times based on policy that a county developed on its own regarding the design professional who is to certify these plans.

In our opinion, any county enactment or policy impermissibly conflicts with State law if it purports to bar professional land surveyors from preparing or certifying these three types of plans.[1]

**I**

**Background**

Those who practice land surveying are required to be licensed under Title 15 of the Business Occupations and Professions ("BOP") Article, Maryland Code. The scope of practice of this profession is

------

[1] In light of this conclusion, we need not consider whether such restrictive local enactments or policies are within a field occupied by State law and, hence, are preempted.

set out in BOP §15-101(g), the definition of "practice land surveying":

(1) "Practice land surveying" means to provide any service the performance of which requires education and experience in the application, to land surveying, of:

(i) special knowledge of the mathematical, physical, engineering, and surveying sciences; and

(ii) the principles and methods of surveying.

(2) "Practice land surveying" includes:

(i) surveying an area to:

1. determine and describe the area correctly for conveyancing; or

2. establish or reestablish a land boundary; and

(ii) plotting of land and subdivision of land, including:

1. determining topography and contours;

2. preparing a recordable plat; and

3. preparing a plan for:

A. a storm drainage system that meets any standards set by the State or a local authority but does not require a hydraulic or structural design of system components;

B. draining for a street or road; and

C. a grade design of a street or road.

Thus, the scope of practice of land surveying explicitly includes preparation of certain storm drainage system plans, plans for street or road drainage, and grade design of a street or road.

These activities are also within the broad scope of practice of engineering. That definition, BOP §14-101(f), provides in pertinent part that:

(1) "Practice engineering" means to provide any service or creative work the performance of which requires education, training, and experience in the application of:

(i) special knowledge of the mathematical, physical, and engineering sciences; and

(ii) the principles and methods of engineering analysis and design.

(2) In regard to a building or other structure, machine, equipment, process, works, system, project, or public or private utility, "practice engineering" includes:

(i) consultation;

(ii) design;

(iii) evaluation;

(iv) inspection of construction to ensure compliance with specifications and drawings;

(v) investigation; and

(vi) planning.

The issue is whether charter home rule counties have the authority to refuse to accept for filing storm water management plans, road drainage plans, and grade design plans that were prepared by professional land surveyors, but instead insist that the plans be prepared by professional engineers.

## II

### Enabling Authority

Article XI-A, §2 of the Maryland Constitution mandated the General Assembly to provide by public general law "a grant of express powers for such County or Counties as may thereafter form a charter under the provisions of ... Article [XI-A]." In response to this requirement, the General Assembly enacted the Express Powers Act, contained in Article 25A, §5 of the Maryland Code, which gave the counties that established a charter form of government the power to enact, amend, and repeal public local laws on matters covered by the Express Powers Act. However, this authority over local laws is qualified by Article XI-A, §3, which provides in part that "in case of any conflict between said local law and any Public General law now or hereafter enacted the Public General Law shall control."

As early as 1868, the Court of Appeals attempted to explain the difference between the terms "local law" and "general law":

> Local laws ... are applicable to all persons, and are distinguished from Public General Laws ... in ... that they are confined in their operation to certain prescribed or defined territorial limits, and the violation of them must, in the nature of things, be local. It is not, therefore, by any means, necessary, to in order to give a Statute the attributes of a public law, that it should be equally applicable to all parts of the State. All that is required to make it a public law of general obligation, is, that it shall apply to all persons within the territorial limits prescribed in the Act.

*State ex rel. Webster v. County Comm'rs of Baltimore Co.*, 29 Md. 516, 520 (1868) (cited in *Cole v. Secretary of State*, 249 Md. 425

(1967).) The Court has continued over the years to refine the distinction between these terms. For example:

> Any complete or final definition of the term "local law" is, because of the varying meanings attached to it, considered in reference to its geographical extent and the classification of the objects to which it applies, difficult to formulate, and perhaps more difficult to apply with any proper degree of uniformity or certainty. A law may be local in the sense that it operates only within a limited area, but general in so far as it affects the rights of persons without the area to carry on a business or to do the work incident to a trade, profession, or other calling within the area. It may also be general in the sense that it affects some matter in which the people of the whole legislative jurisdiction may be interested, such as the general revenue, but local in the sense that it imposes burdens on property, business, or transactions only within a limited area.

*Dasch v. Jackson*, 170 Md. 251, 260, 183 A. 534 (1936).

*Dasch v. Jackson* involved the interpretation of Chapter 377 of the Laws of Maryland 1935, which provided for the licensing and regulation of paperhangers in Baltimore City. The Court determined that the statute was not a local law "[f]irst, because it imposes taxes or fees designed to produce a surplus payable into the general funds of the State ... and to that extent affects to some extent the people of the whole State. Second, because it affects the right of persons not residing in the City of Baltimore as well as the right of persons residing within that city to engage in the business of paper hanging in Baltimore City ...." 170 Md. at 261.

Subsequently, in *Cole v. Secretary of State*, 249 Md. 425, 240 A.2d 272 (1967), the Court of Appeals stated that "[t]he classification of a particular statute as general or local is based on subject matter and substance and not merely on form." 249 Md. at 433 (citing *Ness v. Supervisors of Elections of Baltimore City*, 162 Md. 529, 536, 160 A. 8 (1932) and *State v. Stewart*, 152 Md. 419,

425, 137 A. 39 (1927))  The crux of the issue is whether the subject matter is "exclusively local" to a county.  *See Park v. Board of Liquor License Commissioners*, 338 Md. 366, 378, 658 A.2d 687 (1995).

Applying the tests set forth in these cases, we conclude that the licensing statutes governing engineers and surveyors are surely public general laws, not public local laws. This is so because (1) all applicants are treated in the same fashion, regardless of the place of domicile, (2) the licensing fees are paid into the General Fund of the State, and (3) the licensing procedures and requirements certainly affect people residing in more than one locality. Therefore, pursuant to the Maryland Constitution, conflicting county enactments or practice must yield to the State statute.


### III

### Preemption/Conflict

If a county law conflicts in any manner with a public general law, the local law is invalid to the extent of such conflict.  *City of Baltimore v. Stuvyesant Ins. Co.*, 226 Md. 379, 174 A.2d 153 (1961).[2]  Ordinances that assume directly or indirectly to permit acts or occupations prohibited by State statutes, or to prohibit acts permitted by statute, are uniformly declared to be null and void. 226 Md. at 388.

Some county laws expressly provide for a professional engineer to certify storm water management plans, ignoring the authority of a professional land surveyor.  *See, e.g.,* §3-101 of the Anne Arundel County Code (definition of "certification").  Other counties adhere to the same policy, even though the respective county codes do not contain similar requirements.

Regardless of whether codified by the local statute or adopted as a matter of policy, any county law or policy that contradicts BOP

---

[2] The Court of Appeals has identified three ways by which the State general law may preempt the local law:  pre-emption by conflict, express pre-emption, or implied pre-emption.  *Allied Vending, Inc. v. City of Bowie*, 332 Md. 279, 297, 631 A.2d 77, 86 (1993) (citing *Talbot County v. Skipper*, 329 Md. 481, 487-88, 620 A.2d 880, 883 (1993)).

§15-101(g) is in conflict with the State licensing statute and must yield to the latter.[3] The General Assembly having decided what professional land surveyors may do, a charter home rule county may not effectively reduce that scope of practice by prohibiting an action integral to the profession's practice.

## IV

### Conclusion

In summary, it is our opinion that BOP §15-101(g) allows certification by professional land surveyors of the storm water management and other plans identified in the statute. Laws or practices in charter home rule counties that purport to prevent this activity are unenforceable.

J. Joseph Curran, Jr.
*Attorney General*

Milena Y. Trust
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*

***Editor's Note:***

In Chapter 719 of the Laws of Maryland 1998, the General Assembly rewrote the definition of "practice land surveying." The new definition elaborates on the relationship of the plans discussed in this opinion to local requirements.

---

[3] Nothing stated in this opinion, however, prevents the counties from accepting the plans identified in BOP §15-101(g) that were prepared by either a professional land surveyor or a professional engineer, nor counties prevented in any way from refusing to accept from a professional land surveyor the plans that exceed the prohibition set forth in BOP §15-101(g) with regard to the hydraulic or structural design of system components.